# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**TIFFANY PRUETT,**

        **Plaintiff,**

**v.**                                        **Docket No. 2:09-cv-02600-JPM-cgc**

**GEORGE E. SKOUTERIS, JR.,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court by way of Order of Reference (D.E.# 26) from Chief District Judge McCalla for report and recommendation are Defendant George Skouteris' Motion for relief from judgment entered against him on September 27, 2010 (D.E. # 22) and Motion for stay pending disposition of the motion for relief (D.E. # 23). Plaintiff Tiffany Pruitt filed her responses to the Motions on November 1, 2010. Based upon the briefs filed in support of and in opposition to the motions and the entire record, the court submits the following proposed findings of fact and conclusions of law and recommends that the Motions be denied.

## A. Relevant facts[1]

This case arises out of Defendant's legal representation of Plaintiff following an automobile accident. On October 9, 2006, Plaintiff was in an automobile accident in which Plaintiff's fiancée was killed and Plaintiff was injured. (Decl. of Tiffany Pruett ("Pruett

---

[1] The following facts are taken verbatim from Chief Judge McCalla's September 27, 2010 Order (D.E. #20).

1

Declaration") ¶ 2.) Following the accident, Defendant approached Plaintiff and offered to represent her in the matter. (*Id.* ¶ 3.) Defendant advised Plaintiff he would not charge a fee for handling her claim because he considered himself to be a family friend. (*Id.*) Defendant never said anything else to Plaintiff regarding a fee nor did he have Plaintiff sign a fee agreement. (*Id.* ¶ 4.)

Following her engagement of Defendant, Plaintiff repeatedly asked Defendant about the status of her legal claim. Defendant consistently responded with vague assertions that "he was working on it, and would keep [Plaintiff] posted." (*Id.* ¶ 6.) Defendant kept Plaintiff uninformed as to the status of her claim until the middle of 2007 when Defendant informed Plaintiff that he had settled her claim for $197,480.00. (*Id.* ¶ 8.) Defendant never called or wrote Plaintiff to say that he had an offer to settle her claim nor did he ever get Plaintiff's authorization to make a settlement offer or Plaintiff's consent to accept a settlement amount. (*Id.*)

The exact date when Defendant received the $197,480 is not known. Defendant never provided Plaintiff with a copy of a settlement check or with records of its deposit into his escrow account, despite multiple requests. (Pruett Declaration ¶ 9.) Defendant received and deposited in his account Plaintiff's case settlement funds in approximately June, 2007. (*Id.* ¶ 10.)

That month, Defendant began sending Plaintiff checks in amounts between $1,000 and $2,500. (*Id.* ¶ 10.) The checks were sent approximately monthly. (*Id.*) Despite Plaintiff's numerous requests to pay any remaining medical bills and send the full balance of the settlement, Defendant refused Plaintiff's requests. Instead, Defendant continued sending small amounts through mid-August of 2008, "doling it out to [Plaintiff] in small pieces the way that a parent would give a child an allowance." (*Id.* ¶ 10.)

During this time period, Plaintiff began receiving "dunning" telephone calls from medical providers involved in her treatment following the accident. (*Id.* ¶ 11.) Plaintiff spoke with Defendant frequently regarding paying these providers. (*Id.*) Though Defendant told Plaintiff on more than one occasion that he had paid them, Plaintiff learned otherwise each time she contacted a provider to check on the outstanding balance or received a "dunning" call. (*Id.*)

In August 2008, Plaintiff contacted the firm of Wyatt, Tarrant & Combs, LLP for assistance and Mark Vorder-Bruegge, Jr., Esq. began representing Plaintiff. (Pruett Declaration ¶ 12.) On August 20, 2008, Vorder-Bruegge hand-delivered a letter to Defendant demanding the following:

> Please provide me with a complete accounting of all monies you have received and disbursed from or to any person or entity, where and under what arrangements you currently hold any such monies, and copies of all court papers and other documents of any kind which you have generated or received from any source, in connection with Ms. Pruett.

(Decl. of Mark Vorder-Bruegge, Jr. ("Vorder-Bruegge Declaration") (D.E. 12) ¶¶ 3-4; *Id.* at Ex. 1, August 20, 2008 Letter from Mark Vorder-Bruegge, Jr. to George E. Skouteris, Jr. ("Pl.'s August 2008 Demand Letter").) In response to this demand, Defendant sent a letter dated August 28, 2008 to Vorder-Bruegge indicating that Defendant was attaching "the settlement sheet . . . requested showing the disbursements to date" and "a copy of The Regional Medical Center's Lien for $82,097.35." (*Id.* at Ex. 4, August 28, 2008 Letter from George E. Skouteris, Jr. to Mark Vorder-Bruegge, Jr. ("Def.'s August 2008 Response Letter").) The letter also stated that Plaintiff had been paid $67,500 to date and that she would "obviously, be entitled to more proceeds when the Lien is satisfied." (*Id.*)

The "Settlement Sheet" provided by Defendant was entirely handwritten and confirmed

3

the total settlement amount of $197,480. (*Id*. at Ex. 4, August 28, 2008 Settlement Sheet.) Under the section labeled "Less Amounts Withheld for Payment by Attorney" Defendant itemized purported payments and corresponding check numbers made to Plaintiff's medical providers totaling $88,692.90. (*Id*.) In the same section, Defendant listed "Blue Cross" and a balance of $19,191 but there was no corresponding check number provided. (*Id*.) Defendant also listed "Partial Proceeds to Client" with two corresponding dollar amounts totaling $67,500. (*Id*.)

One of the purported payments stated on the Settlement Sheet was check number 1349 to "Regional Medical Center" for $82,097. (*Id*.) In the margin Defendant wrote "1348.39" out to the side of that line. (*Id*.) In his declaration, Vorder-Bruegge states that this "caused me to believe at the time that the deductions from Ms. Pruett's settlement proceeds would include a payment by [Defendant] to the Regional Medical Center for $82,075.35." (*Id*. ¶ 5.) Vorder-Bruegge explains that "[t]he cover letter said that, the enclosed lien said that, the money ($) figure in the enclosed 'settlement sheet' said that, and I had no idea what the "1348.39" marginalia referred to." (*Id*.)

Prior to Defendant's letter dated August 28, 2008 to Vorder-Bruegge, Plaintiff spoke on the telephone with a representative in the collections department at the Regional Medical Center. (Pruett Declaration ¶ 17.) The representative told Plaintiff that "they had received and accepted from [Defendant] the payment of $1348.39, a very small fraction of their original claim, because of adjustments or write-downs, and that [Plaintiff's] account was paid in full and [Plaintiff] no longer owed them anything." (*Id*.)

The small payments from Defendant to Plaintiff stopped in August 2008. For close to one year, Defendant ceased turning over any of Plaintiff's settlement funds. (Pruett Declaration ¶ 15.)

On October 20, 2008 and again on November 21, 2008, Vorder-Bruegge sent Defendant letters pointing out the insufficiency of Defendant's response to the August 20 Demand Letter and making a formal demand that Defendant disburse the entire remaining balance of Plaintiff's funds. (*Id.* at Ex. 2, October 20, 2008 Letter from Mark Vorder-Bruegge, Jr. to George E. Skouteris, Jr. ("Pl.'s October 2008 Demand Letter"), Ex. 3, November 21, 2008 Letter from Mark Vorder-Bruegge, Jr. to George E. Skouteris, Jr. ("Pl.'s November 2008 Demand Letter").) On December 1, 2008, Defendant sent a letter to Vorder-Bruegge indicating that he was "gathering the documentation . . . requested" and would "be providing that to [Vorder-Bruegge] in the very near future." (*Id.* at Ex. 5, December 1, 2008 Letter from George E. Skouteris, Jr. to Mark Vorder-Bruegge, Jr. ("Def.'s December 2008 Response Letter").) Defendant also stated that he would "be glad to send [Plaintiff] $2000.00 to help with her financial situation." (*Id.*) In fact, Defendant did not send Plaintiff any additional funds until almost one year later. (*Id.* at Ex. 10, Handwritten Summary of Cancelled Checks.) On December 8, 2008, Vorder-Bruegge reported Defendant to the Board of Professional Responsibility of the Tennessee Supreme Court (the "Board"). (*Id.* ¶ 8.) On July 8, 2009, the Board sent a letter to Vorder-Bruegge enclosing a copy of documents that it had received from Defendant one month prior. (*Id.* at Ex. 6, July 8, 2009 Letter from Preston Shipp to Mark Vorder-Bruegge, Jr. ("July 2009 Board Letter").) The documents were sent to the Board by Defendant on June 2, 2009 with a cover letter describing the enclosure as "a copy of Ms. Pruett's file" that was purportedly complete except for "a few more items such as photographs." (collectively "Plaintiff's File") (*Id.* at Ex. 7, June 2, 2009 Letter from George E. Skouteris, Jr. to Preston Shipp ("Def.'s June 2009 Letter to Board").) Plaintiff's File was slightly less than one inch thick and consisted of eight letters written by

Defendant to third parties regarding Plaintiff and copies of Plaintiff's medical records. (*Id*. ¶¶ 10, 12.) To date, Defendant has refused to provide Plaintiff with her file.

The records provided to the Board gave Plaintiff information for the first time relating to Defendant's representation of her. The records showed that Defendant never filed any lawsuit on Plaintiff's behalf. (Vorder-Bruegge Declaration Ex. 8, March 27, 2008 Letter from George E. Skouteris, Jr. to John Friffee, III at Farmers Bureau Insurance Company ("March 2008 Settlement Letter").) Instead, a letter dated March 27, 2007 indicates that Defendant entered into a settlement agreement with Plaintiff's insurance company for $197,480.00 without ever filing suit. (Vorder-Bruegge Declaration Ex. 8, Settlement Letter.)

Several of the letters written by Defendant are on letterhead of Skouteris & Magee PLLC. (*Id*. at Ex. 4, Def.'s August 2008 Response Letter; Ex. 5, Def.'s December 2008 Response Letter; Ex. 7, Def.'s June 2009 Letter to Board.) Defendant's biography and picture also appeared on the firm's website, www.skouterismagee.com. (Vorder-Bruegge Declaration ¶ 18; *Id.* at Ex. 14, Screen Print of www.skouterismagee.com/attorneys.php.) Believing Defendant to be a member of that firm, Vorder-Bruegge contacted the firm in late June of 2009 "in a final attempt to avoid [the] necessity" of filing a lawsuit. (Appl. (Mot. and Mem.) for Default J. ("Pl.'s Mot for Default J.") (D.E. 11) ¶18; Vorder-Bruegge Declaration ¶ 18.) Milton Magee and Michael Skouteris, members of that firm, told Vorder-Bruegge that Defendant was not in any way affiliated with the firm, that the firm's letterhead was unauthorized, and that the firm did not know how Defendant's biography had been included on the firm's web page. (Vorder-Bruegge Declaration ¶ 18.) Following that conversation, letters from Defendant ceased using the Skouteris & Magee PLLC letterhead. (*Id*.) On July 2, 2009, Defendant distributed an additional

6

$32,018.05 to Plaintiff through Vorder-Bruegge. (Pruett Declaration ¶ 18.) To date, Defendant has made no other payments to Plaintiff. (See Vorder-Bruegge Declaration Ex. 10, Nov. 3, 2009 Handwritten Summary.)

In September 2009, Plaintiff asked Vorder-Bruegge to file suit against Defendant to recover the balance of her settlement funds. (Pruett Declaration ¶ 18; Compl. for Lawyer's Conversion of Client Funds and Property ("Compl.") (D.E. 1.).) In Plaintiff's Declaration, she explains her decision: "[A]s a result of information finally accumulating about [Defendant's] handling of my claim and my funds, I felt that [Defendant] was never going to give me the remainder of my funds voluntarily, assuming he still had the funds." (Pruett Declaration ¶ 18.) On November 3, 2009, after the lawsuit was filed, Vorder-Bruegge received a letter from Defendant which enclosed copies of cancelled checks to Plaintiff along with a handwritten summary of the distributions by Defendant. (Vorder-Bruegge Declaration Ex. 9, November 3, 2009 Letter from George E. Skouteris, Jr. to Mark Vorder-Bruegge, Jr. ("Def.'s November Letter").) By comparing the summary with the cancelled checks, Plaintiff learned that Defendant paid $1348.39 in early August 2008 to the Regional Medical Center as payment in full on Plaintiff's account. (*Id*. at Ex. 10, Nov. 3, 2009 Handwritten Summary.) This payment was made prior to Defendant's letter indicating that the Regional Medical Center's outstanding lien was for $82,097.35. (*Id*. at Ex. 4, Def.'s August 2008 Response Letter.)

Plaintiff also learned that Defendant, who received the settlement funds by June 12, 2007, made one payment for $690.00 to one medical provider, Cynthia Mealor, in November 2007. (Vorder-Bruegge Declaration Ex. 10, Nov. 3, 2009 Handwritten Summary) Defendant did not make any other payments to a provider until July 2008, more than one year after receiving the

7

settlement proceeds. (*Id.*) Though Plaintiff begged Defendant on numerous occasions to pay a $19,191.00 bill to Blue Cross/Blue Shield, Defendant never did. (Pruett Declaration ¶ 19.) To date, Blue Cross/Blue Shield is still owed $19,191.00 and continues to "dun" Plaintiff. (Vorder-Bruegge Declaration at Ex. 13, Letters from Blue Cross/Blue Shield; Pruett Declaration ¶ 11.) The check records further revealed that two of the distributions to Plaintiff—check number 511 dated June 5, 2008 for $2000 and check number 526 dated June 6, 2008 for $1500—were drawn on Defendant's personal checking account. (*Id.* at Ex. 10, Nov. 3, 2009 Handwritten Summary; *Id.* ¶ 14.) All other checks, twenty-five in all, were drawn on an account titled "George Skouteris, Jr. Attorney Escrow Account". (*Id.* ¶ 14.) On January 26, 2010, Vorder-Bruegge received another letter from the Board, enclosing the Defendant's most recent correspondence with the Board dated January 20, 2010. (*Id.* at Ex. 11, January 26, 2010 Letter from Preston Shipp to Mark Vorder-Bruegge, Jr. ("January 2010 Letter from the Board").) The enclosed letter from Defendant to the Board revealed that Defendant was claiming an attorney fee of 33%. (*Id.* at Ex. 12, January 20, 2010 Letter from George E. Skouteris, Jr. to Preston Shipp ("Def.'s January 2010 Letter to Board").) Defendant's letter to the Board stated that "[t]he fee agreement of 33% was discussed and agreed to but never memorialized in writing." (*Id.*)

According to the records provided to Plaintiff two and a half years after Defendant received the settlement funds, Defendant distributed a total of $96,518.05 of the $197,480.00 settlement proceeds to Plaintiff in twenty-seven "installments" between June 12, 2007 and July 2, 2009. (*Id.* at Ex. 10, Nov. 3, 2009 Handwritten Summary.) Defendant paid $7944.29 to Plaintiff's medical providers between November 2007 and August 2008. (*Id.*) The total settlement amount that remains undistributed to Plaintiff more than three years later is

8

$93,017.66. (*Id*.; Pruett Declaration ¶ 20.) Since the accident, Plaintiff has been forced to rely on the assistance of others in order to survive financially. (Pruett Decl. ¶ 2.) Defendant's method of sending "a small amount to help [Plaintiff] out" has led Plaintiff at times to wonder whether she will have enough money to buy groceries, to provide for her children, or to pay for school. (Pruett Decl. ¶¶ 2, 6.)

Following commencement of this lawsuit on September 15, 2009, service was made upon Defendant in accordance with Fed. R. Civ. P. 4 on September 22, 2009 (D.E. 5) giving Defendant until October 13, 2009 to answer. After being served with the summons, Defendant approached Plaintiff's counsel and requested that the action be resolved through settlement negotiations. (Verified Order to Show Cause (Doc. 6) (D.E. 7) 1-2.) Defendant made assurances to Plaintiff that the settlement funds in question had not been dissipated and would not be put in jeopardy by conducting settlement negotiations. (*Id*. at 2 n.1.)

Following a prolonged period of default, in which Defendant did not file an answer or otherwise respond to the Complaint, the clerk entered default under Federal Rule of Civil Procedure 55(a) on March 11, 2010. (D.E. 9.) Plaintiff filed the instant motion for default judgment pursuant to Rule 55(b)(2) on April 30, 2010. (D.E. 11.) Plaintiff requests "default judgment against [Defendant] for compensatory damages in the amount of $93,017.66, punitive damages in the amount of $300,000, authorization for a writ of attachment of all records in [Defendant's] possession relating to his former representation of [Plaintiff], and all taxable costs of this action." (Pl.'s Mot. for Default J. 12.)

On May 12, 2010, the Court referred Plaintiff's Motion to the Magistrate Judge for report and recommendation (D.E. 15). The Magistrate Judge held a hearing on Plaintiff's Motion on

9

August 18, 2010, at which Plaintiff was present and Defendant George E. Skouteris, Jr. failed to appear. On September 27, 2010, the District Court entered judgment against Defendant in the amount of $93,017.55 in compensatory damages and $300,000 in punitive damages.

In his memorandum in support of the instant motion for relief from judgment, Defendant does not disagree with facts as set forth by the District Court in its Order Adopting in Part and Overruling in Part the Report and Recommendation of the Magistrate Judge at docket entry 20. However, he maintains that he was not given notice of the entry of default and of the motion for default judgment and that his failure to file an answer is due to his reliance on assurances that no action would be taken "while the parties engaged in settlement negotiations." Memorandum in Support of Motion to Alter or Amend, p 1.

**B. Relevant law and analysis**

Skouteris seeks relief from the judgment entered in this case under two provisions – Fed. R. Civ. P. 60(b)(1) and (6). Unlike a clerk's entry of default, which needs only good cause to be set aside under Fed.R.Civ.P. 55(c), a default that has become final as a judgment can be set aside only under the stricter standards for setting aside final and appealable orders under Fed.R.Civ.P. 60(b). *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 595 (6th Cir.2006). Upon review of a motion to vacate a default judgment, the court is to consider (1) whether the proponent's culpable conduct led to the default, (2) whether the proponent has a meritorious claim or defense, and (3) whether the opposing party would be prejudiced. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir.2002); *United Coin Meter Co., Inc. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir.1983). The culpable conduct prong should be examined first, and when relief is

sought under Fed.R.Civ.P. 60(b)(1), the proponent must demonstrate that its default was the product of mistake, inadvertence, surprise, or excusable neglect. *Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co.*, 58 F.3d 204, 209-10 (6th Cir.1995) (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992)). Only if the proponent satisfies this prong should the remaining two factors be examined; otherwise the motion to set aside the default judgment should be denied. *Id*.

Ascertaining whether neglect is excusable is an equitable determination taking into account all relevant circumstances, including the following factors set forth by the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993): "(1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir.2001) (citing *Pioneer Inv. Servs.*, 507 U.S. at 395, 113 S.Ct. 1489).

Rule 60(b)(6) should apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir.1989) (citing *Pierce v. United Mine Workers,* 770 F.2d 449, 451 (6th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986)); *see also Ackermann v. United States,* 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); *United States v. Karahalias,* 205 F.2d 331, 333 (2d Cir.1953) (holding that Rule 60(b)(6) may be used to grant relief in case of extreme and undue hardship). Courts, however, must apply subsection (b)(6) only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Hopper,*

867 F.2d at 294.

Rule 62(b) of the Federal Rules of Civil Procedure provides that "on appropriate terms for the opposing party's security," the court may stay the execution of a judgment while a postjudgment motion under Rule 60 remains pending. Fed.R.Civ.P. 62(b)(4). "What constitutes 'appropriate terms' is a matter left to the trial court's discretion, but normally the party seeking a stay is required to post a bond sufficient to protect fully the prevailing party's interest in the judgment." *Lewis v. United Joint Venture,* No. 07-639, 2009 WL 1654600, at *1 (W.D. Mich. June 10, 2009) (citing *Arban v. West Publ'g Corp.,* 345 F.3d 390, 409 (6th Cir.2003)). Although a court may forego the requirement of a bond in certain circumstances, there is a presumption in favor of requiring a bond, and the party seeking the dispense with the requirement bears the burden of showing why a bond should not be required. *Id.*

## C. Proposed conclusions of law

It is quite ironic that in a case where the defendant's neglect of the plaintiff's case was at issue, the defendant now claims excusable neglect in his own case. Skoueris' neglect of this case is the polar opposite of excusable. In this case, unlike so many others, he does not have a separate attorney to blame as he elected to represent himself up to the point of filing the instant motions[2]. Skouteris, as an attorney licensed to practice law in Tennessee and admitted to practice in Federal Court, is deemed to know the Federal Rules of Civil Procedure – in particular, the requirement of Fed. R. Civ. P. 12(a)(1)(A)(i) to answer a complaint within 21 days of being served with the complaint and summons and the consequence set forth in Fed. R. Civ. P. 55 for

---

[2] Thus implicating the proverb that a man who represents himself has a fool for a client. See, *Kay v Ehrler*, 499 U.S. 432, 438 (1991). Relief under 60(b)(1) is not available when the excusable neglect is premised on attorney error. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt Inc.,* 298 F.3d 586, 594 (6th Cir.2002).

the failure to plead or otherwise defend. Engaging in settlement discussions does not relieve a party of its responsibilities under the Rules or from the consequences of a failure to adhere to the Rules. See, *Tindall v. One 1973 Ford Mustang*, 2006 WL 1329168, \*4 (E.D. Mich. May 16, 2006) (the fact that parties tentatively reached a settlement agreement did not equate to excusable neglect with respect to filing an appearance or an answer to the complaint). Therefore, it is recommended that the Court find that the Defendant is solely culpable for his failure to answer or otherwise plead and the resultant default.

Having found that the default is as a result of Defendant's own culpable conduct and not excusable neglect, the Court is not required to examine the remaining *Coin Meter* factors in order to make a determination that the Defendant has not made the requisite showing to set aside the judgment. However, it is of note that of the two remaining factors – whether there exists a meritorious defense and whether the opposing party would be prejudiced – the Defendant did not even address the meritorious defense prong in his memorandum. Consequently, it is recommended that the Court deny Defendant's motion for relief pursuant to Fed. R. Civ. P. 60(b)(1).

With regard to relief pursuant to Fed. R. Civ. P. 60(b)(6), Defendant did not argue any factors in his Memorandum to support relief under this provision. A motion may not be brought under Rule 60(b)(6) if it is premised on any of the grounds listed in (b)(1)-(5). *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863 (1988). Defendant has provided no independent factual basis to support relief pursuant to Rule 60(b)(6). Therefore, it is recommended that the Court deny Defendant's motion for relief pursuant to Fed. R. Civ. P. 60(b)(6).

As to the Motion for Stay pursuant to Fed. R. Civ. P. 62, Defendant made no provision in his motion for security for Plaintiff's judgment. Without security for Ms. Pruitt, there is no justification for the Court to exercise its discretion and permit a stay pending final resolution of the Rule 60 motion.

**D. Recommendation**

For the reasons stated above, it is recommended that the motion for relief from judgment and the motion for stay be denied.

Signed this 6th day of January, 2011.

s/ Charmiane G. Claxton<br>
CHARMIANE G. CLAXTON<br>
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE SAID OBJECTIONS OR EXCEPTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**